[No. D014016. Fourth Dist., Div. One. Jan. 12, 1993.]

JUAN MARTINEZ et al., Plaintiffs and Appellants, v.
CITY OF POWAY et al., Defendants and Respondents.

**COUNSEL**

Ronquillo, Orderica & Serrano, Ronquillo & Orderica and Don C. Burns for Plaintiffs and Appellants.

Haasis, Pope & Correll, William A. Calders, Susan J. Gill, Harris D. Himes and Brian J. Stolliker for Defendants and Respondents.

**OPINION**

**BENKE, Acting P. J.**—In this case the trial court prevented plaintiff's traffic expert from offering any testimony about reconstruction of the accident in which plaintiff was injured. We reverse because there is no dispute the expert was qualified to give reconstruction testimony and the record discloses the expert's identity was disclosed, along with a description of his

proposed testimony, within the time required by Code of Civil Procedure[1] section 2034. In particular we reject the defendants' contention the exclusion sanction provided by section 2034, subdivision (j), may be employed where, although the description of the expert's proposed testimony is inaccurate or inadequate, a timely disclosure of an expert's identity has been made.

## LEGAL ISSUE

Our usual practice is to set forth the factual and procedural history of a case before confronting the legal issues raised on appeal. However, in this instance we believe it will be more helpful in understanding the material portions of the record to initially describe the legal issue which largely governs our disposition.

We begin our analysis by recognizing the exchange of information about expert witnesses is a critical event in the course of any civil litigation and well-defined procedures are needed to ensure fairness to the parties and efficient resolution of disputes. "Modern litigation relies increasingly on expert testimony. To prepare for trial, each side needs to know which expert will testify for the other side and what they will have to say. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

". . . Without some procedure to discover the identities and opinions of experts hired shortly before trial, there would be flurries of last-minute discovery attempts and motions for continuance of the trial.

". . . Interrogatories served early in the litigation asking for identity and opinions of experts who will testify usually come back answered, 'We have not chosen our expert witnesses yet.'

" 'Update' interrogatories can be served later, but there is a cut-off on discovery 30 days before trial . . . . So, by waiting until then to hire experts, parties can avoid disclosure entirely. And, under the interrogatory procedure, there is no way of excluding undisclosed experts from testifying!" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1992) ¶¶ 8:1625-8:1629, rev. #2, 1987, pp. 8J-1-8J-2 [Weil & Brown].)

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

The Legislature's response to these problems was enactment of what is now section 2034.[2] Under section 2034, subdivision (a), a party may serve all other parties a demand for a simultaneous exchange of information concerning each other's expert trial witnesses. Following service of a demand, section 2034, subdivision (f)(1), requires that each party serve the other parties with either: "(A) A list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial. [¶](B) A statement that the party does not presently intend to offer the testimony of any expert witness."

With respect to experts listed under section 2034, subdivision (f)(1)(A), subdivision (f)(2) requires counsel for each party submit a declaration which contains: "(A) A brief narrative statement of the qualifications of each expert. [¶](B) A brief narrative statement of the general substance of the testimony that the expert is expected to give. [¶](C) A representation that the expert has agreed to testify at the trial. [¶](D) A representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial. [¶](E) A statement of the expert's hourly and daily fee for providing deposition testimony."

Following receipt of an expert witness list, a party may take the deposition of any person on the list. (§ 2034, subd. (i).) With certain exceptions, depositions of experts are governed by the procedures for taking oral and written depositions set forth in sections 2025, 2026, and 2027. (*Ibid.*)

Section 2034, subdivision (j), provides for enforcement of the disclosure requirements by allowing the trial court to exclude testimony from expert witnesses at trial. The exclusion sanction may be imposed upon "any party who has unreasonably failed to do any of the following: [¶](1) List that witness as an expert under subdivision (f). [¶](2) Submit an expert witness declaration. [¶](3) Produce reports and writings of expert witnesses under subdivision (g). [¶](4) Make that expert available for a deposition under subdivision (i)." (§ 2034, subd. (j).)

For purposes of this opinion it is important to note section 2034, subdivision (j), *does not* permit exclusion of testimony if the description of an expert's testimony required by section 2034, subdivision (f)(2)(B), is defective. Although the earlier expert exchange statute contained an express

---

[2]Prior to enactment of section 2034 as part of the Civil Discovery Act of 1986 (see Stats. 1986, ch. 1336, § 2, pp. 4752-4758), exchanges of information about expert information were governed by former section 2037 et seq.

provision permitting exclusion where the "general substance" of an expert's testimony was not disclosed, in enacting section 2034, the Legislature rejected a proposal that such power be provided under section 2034. (See former §§ 2037.3, 2037.5; Weil & Brown, *supra*, ¶¶ 8:1676-8:1680, 8:1717.1-8:1717.4.) "Under *former* law, it was ground for objection to expert witness testimony at trial that the expert witness declaration failed to state sufficiently the expert's qualifications or the 'general substance of expected testimony,' etc. [Citation.]

"However this led to considerable 'gamesplaying'—i.e., raising objections at trial to defects that could have been corrected earlier. That is apparently the reason for the present statute . . . ." (Weil & Brown, *supra*, ¶ 8:1717.2, rev. #1 1992.)

Finally under section 2034, subdivision (k), a party may move the court for leave to augment an expert designation with additional experts or additional information about experts previously designated.

With this background in mind, we turn to the record in this case.

### FACTUAL AND PROCEDURAL HISTORY

This case grows out of a collision between plaintiff Juan Martinez, who was riding a bicycle, and defendant Matthew Childs, who was driving his car northbound on Espola Road in the City of Poway. The collision occurred on October 25, 1988, near the intersection of Espola Road and North Crest Lane in Poway. On May 24, 1989, Martinez filed a complaint against Childs and Poway, alleging Childs was negligent and the intersection was dangerous.[3]

On July 30, 1990, Martinez served the other parties in the case with his list of experts and a declaration from his counsel setting forth the qualifications of each expert, the general substance of their testimony and their hourly witness fee. Martinez's witness list included Harry J. Krueper, Jr., of Krueper Engineering & Associates. Counsel's initial declaration stated: "[Krueper] will testify as to the road design and the improvements contained therein including, but not limited thereto: striping, width, slope, site distance, traffic volumes, traffic speed, accident history, and any other factors bearing upon the safety or lack thereof of the site where the accident occurred. Mr. Krueper has agreed to testify at trial and will be sufficiently familiar with the facts of this case to submit to a meaningful deposition."

---

[3]Martinez also named Geraldine Donnelly, the owner of the car Childs was driving, as a defendant; Martinez's wife, Maxima, joined her husband as a plaintiff, alleging she suffered loss of consortium as a result of his injuries.

On August 20, 1990, Martinez served a supplemental expert witness designation. The supplemental designation stated Martinez intended to offer expert testimony from Ted Suter. Suter was identified as an accident reconstruction expert whose testimony would "include his opinions regarding the reconstruction of the subject accident."

On October 5, 1990, Martinez served a withdrawal of designated experts and a separate plaintiffs' amended expert witness designation on the defendants. The withdrawal of designated experts stated Martinez was withdrawing Suter as a designated expert; the plaintiffs' amended expert witness designation stated: "In addition to testifying as a traffic transportation engineer, Mr. Krueper will testify in the capacity of an accident reconstructionist. He will testify to his analysis and study of the subject accident, including but not limited to, how the accident occurred, sequence of events and resultant injuries. [¶]Mr. Krueper has agreed to testify at trial and will be sufficiently familiar with the facts of this case to submit to a meaningful deposition."

On October 26, 1990, Martinez moved to augment his expert designation to include Krueper's proposed accident reconstruction testimony. The trial court denied Martinez's motion on November 14, 1990, and Krueper's deposition was taken by the defendants on November 16, 1990.

Trial commenced on January 31, 1991. Poway moved *in limine* to exclude testimony from Krueper about reconstruction of Martinez's accident or other accidents in the area where Martinez was injured. The trial court granted Poway's motion.

Following Martinez's opening statement, Childs moved for a judgment of nonsuit on the grounds Martinez did not propose to present any evidence Childs was traveling at an unreasonable rate of speed at the time of the accident. The trial court granted Childs's motion.

Following presentation of Martinez's case-in-chief, Poway also moved for a nonsuit, and the trial court granted the motion.[4]

### ISSUE ON APPEAL

On appeal Martinez argues he should have been permitted to present accident reconstruction evidence from Krueper. He further contends the

---

[4]No judgment of dismissal is in the record on appeal presented by the parties. Accordingly we ordered the superior court file transmitted to this court. (Rule 12(a), Cal. Rules of Court.) The superior court file contains judgments in favor of Childs and Poway entered after Martinez's notice of appeal was filed and those judgments are deemed part of the record on appeal. (*Ibid.*) The notice of appeal is deemed filed immediately after entry of the judgments. (Rule 2(a), Cal. Rules of Court.)

reconstruction evidence available from Krueper would have established Childs's negligence and defeated Poway's motion for nonsuit. We agree and reverse the judgments.

DISCUSSION

I

*Krueper's Reconstruction Testimony*

■ On appeal Childs and Poway make a persuasive argument the trial court properly denied Martinez's pretrial motion to augment his witness declaration to include accident reconstruction testimony from Krueper. As Childs and Poway point out, a motion to augment an expert designation may be granted only after the trial court has considered the prejudice to any party, the moving party's diligence in deciding to offer the testimony, and any mistake, inadvertence, surprise or excusable neglect which prevented the moving party from making a more timely disclosure. (§ 2034, subd. (k).) Given evidence in the record Martinez was aware of the need to augment the description of Krueper's proposed testimony as early as September 13, 1990, yet did not serve the augmentation until October 5, 1990, and the additional fact that at the time the motion was heard trial was scheduled to commence within two weeks, we have little doubt the trial court acted well within its discretion in denying Martinez's pretrial motion. (See *Dickison* v. *Howen* (1990) 220 Cal.App.3d 1471, 1476 [270 Cal.Rptr. 188]; *Sprague* v. *Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1039 [213 Cal.Rptr. 69].)

However, as our earlier discussion revealed, Martinez *did not need* relief under section 2034, subdivision (k), in order to offer additional testimony from Krueper at the time of trial. (Weil & Brown, *supra*, ¶¶ 8:1717.2, 8:1740.) Thus contrary to Childs and Poway's argument, the propriety of the trial court's order denying Martinez's pretrial motion in no way supports the later *in limine* order excluding reconstruction testimony from Krueper at trial. Rather, because Krueper's identity had been disclosed to other parties in a timely fashion along with a description of his testimony, albeit an inaccurate one, the trial court had no power to limit Krueper's testimony at trial. (*Ibid.*)

II

*Nonsuits*

A.  *Absence of Reconstruction Testimony*

■ In ruling on Childs's nonsuit, the trial court asked Martinez's counsel whether he would be able to present any evidence Childs was driving at

an unreasonable speed. In light of the fact the trial court would not permit Krueper to offer reconstruction testimony, Martinez's counsel stated: "I'd like to, your honor, but I don't have the opportunity." The trial court then granted the nonsuit.

In ruling on Poway's nonsuit, the trial court assumed Martinez presented evidence the intersection was dangerous to bicyclists but found Martinez had not presented any evidence the dangerous condition caused the collision. Again the trial court relied on the fact Martinez had not offered any reconstruction testimony.

Plainly, in suffering the nonsuit in favor of Childs and in being unable to present evidence of causation against Poway, Martinez was severely prejudiced by the trial court's *in limine* order limiting Krueper's trial testimony. Thus the judgment in favor of Childs must be reversed and the nonsuit obtained by Poway cannot be based on Martinez's failure to demonstrate causation.

### B. *Notice*

As a second ground for granting Poway's nonsuit, the trial court found Martinez had not presented any evidence the city had notice of the dangerous nature of the intersection. (See Gov. Code, § 835 et seq.) However under Government Code section 835.2, subdivision (b), a plaintiff may demonstrate constructive notice of a dangerous condition by presenting evidence the condition existed "for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."[5]

In the testimony Martinez was allowed to elicit from Krueper, Krueper stated that, given the physical characteristics of the intersection and the ambient speed of traffic, the intersection was dangerous to bicyclists attempting to cross Espola Road.[6] Krueper was further prepared to testify that a traffic engineer for the city, based upon information about the intersection

[5]Section 835.2, subdivision (b), further provides that on the issue of due care "admissible evidence includes but is not limited to evidence as to: [¶](1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for use or uses for which the public entity used or intended others to use the public property and for uses that public entity actually knew others were making of the public property or adjacent property."

[6]Krueper's testimony as to the dangerous nature of the intersection amply supports the trial court's assumption that, for purposes of ruling on Poway's motion for nonsuit, Martinez established existence of a dangerous condition. Likewise, on appeal the testimony from

which the engineer should have had available to him, *should have* recognized the intersection was dangerous. However the trial court refused to permit Krueper to testify as to what a traffic engineer should have known about the intersection.

In light of Government Code section 835, evidence about what information should have been available to a city traffic engineer and the conclusions to be drawn from such evidence were plainly relevant and the trial court erred in excluding Krueper's testimony on those issues. That error in turn undermines the order granting Poway a nonsuit because with Krueper's testimony, a trier of fact may have concluded the city, in the exercise of due care, should have had notice of a dangerous condition. (See *Straughter* v. *State of California* (1976) 89 Cal.App.3d 102, 110-111 [152 Cal.Rptr. 147].)

In sum, then, the judgment granted in favor of Poway must also be reversed.

Judgments reversed. Appellants to recover their costs of appeal.

Froehlich, J., and Nares, J., concurred.

The petitions of both appellants and respondents for review by the Supreme Court were denied March 25, 1993. Panelli, J., and Arabian, J., were of the opinion that the petitions should be granted.

---

Krueper disposes of Poway's argument Martinez failed to establish existence of a dangerous condition.